Morales v City of New York (2025 NY Slip Op 01173)

Morales v City of New York

2025 NY Slip Op 01173

Decided on February 27, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 27, 2025

Before: Webber, J.P., Gesmer, Shulman, Pitt-Burke, Higgitt, JJ. 

Index No. 32942/19|Appeal No. 3507-3508|Case No. 2024-01363 2024-02967|

[*1]Yajaira Morales etc., et al., Plaintiffs-Appellants,
v
The City of New York, et al., Defendants-Respondents. 

The Steiner Law Firm, PLLC, Ossining (Norman Steiner of counsel), for appellants.
Muriel Goode-Trufant, Corporation Counsel, New York (Janet L. Zaleon of counsel), for respondents.

Order, Supreme Court, Bronx County (Mitchell J. Danziger, J.), entered on or about July 10, 2023, which, to the extent appealed from as limited by the briefs, granted defendant City's motion for summary judgment dismissing the complaint, unanimously affirmed, without costs. Appeal from order, same court and Justice, entered on or about April 16, 2024, which, to the extent appealed from as limited by the briefs, granted plaintiffs' motion to reargue their opposition to the City's motion for summary judgment and, upon reargument, adhered to the prior determination, unanimously dismissed, without costs, as academic.
Decedent's son called 911 at his mother's request, and informed the operator that his mother was having difficulty breathing. Decedent told her son that her complaint was not difficulty breathing but chest pain, and the son communicated this correction to the operator. Within five minutes, first-responder firefighters appeared at decedent's fifth-floor walk-up apartment, where they spoke with decedent and assessed her condition, including her pulse, breathing, circulation and temperature. According to decedent's son, decedent complained of chest pain, and the firefighters administered oxygen, but decedent continued to complain of chest pain.
While the City's witnesses generally concurred that it was ill-advised to increase the oxygen demand of a patient with cardiac symptoms by walking down stairs, the firefighters also testified that decedent's general presentation was not that of someone in cardiac distress or otherwise in an emergent condition. Based on their assessment of decedent, the firefighters offered decedent the option of walking down to a waiting ambulance to permit her to reach a hospital more quickly. The waiting ambulance was equipped with a stair chair, a portable apparatus that permitted transport in a seated position. Decedent descended the stairs while receiving oxygen and being assisted by the firefighters. At least one of the firefighters recalled that decedent still appeared well, she apparently informed the EMTs of her chest pain, and EMS accepted decedent and dismissed the firefighters from the scene. Although the EMTs' examination of decedent showed normal skin color, skin condition and breathing rate, she collapsed while being treated by EMS, and could not be revived.
Plaintiffs' complaint alleged that the City caused decedent's cardiac arrest and death by requiring her to descend five flights of stairs when responding to a call of a life-threatening condition, and alleged causes of action for negligence; intentional infliction of emotional distress; wrongful death; and negligent hiring, supervision, and retention.
The City moved for summary judgment on the grounds that it did not owe plaintiffs' decedent a special duty as a matter of law, and that plaintiffs' claims emanated from the discretionary acts of its employees for which it was immune from liability. Supreme Court granted the motion, finding no evidence [*2]that plaintiffs' decedent acted to her detriment in reliance on the municipal employees' alleged assurances by foregoing available alternative avenues of assistance.
Supreme Court granted plaintiffs' motion for leave to reargue the decision and, upon reargument, adhered to its prior determination, finding no evidence of municipal assurances, decedent's detrimental reliance on municipal promises or actions, or available alternatives from a source other than the City. This appeal ensued.
Plaintiffs argue that the City is not entitled to summary judgment on the basis of governmental immunity because they raised issues of fact as to whether the firefighters were exercising discretion. They argue that the existence of an assessment "protocol" applicable when confronted with a particular cluster of symptoms or complaints meant that the firefighters merely followed a non-discretionary "standard procedure."
Assuming that plaintiffs raised an issue of fact as to whether the City owed their decedent a special duty, they nevertheless failed to raise an issue of fact as to the City's entitlement to summary judgment on the ground of governmental function immunity.
A municipality is immune from liability where the actions of its employees in performing governmental functions involves the exercise of discretion (see McLean v City of NY, 12 NY3d 194, 202-203 [2009]). Discretionary acts "involve the exercise of reasoned judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result" (Tango v Tulevech, 61 NY2d 34, 40-41 [1983]). Applying that standard, we find that the City is immune from lability because the responding firefighters were performing discretionary acts.
Emergency medical response services perform "classic" governmental functions (see Applewhite v Accuhealth, Inc., 21 NY3d 420, 427-428, 430 [2013]), and the City demonstrated that the responding firefighters' actions resulted from discretionary decision-making, including the method by which plaintiffs' decedent exited the building, after considering their conversations with her, their observations of her, and the conclusions drawn after their assessment of her condition (see Walker-Rodriguez v City of New York, 231 AD3d 1090, 1093 [2d Dept 2024]).
Plaintiffs' expert opined that the assessment "protocol" provided a mandatory course of action from which the firefighters could not deviate, demonstrating that their actions were merely ministerial. However, a generally uniform approach in assessment and care does not change the discretionary nature of the firefighters' actions and the governmental function (see e.g. Matter of World Trade Ctr. Bombing Litig., 17 NY3d 428, 448 [2011], cert denied 568 US 817 [2012]). The expert's remaining conclusions related to the quality of the care rendered by the firefighters; however, "even if such decisions prove to be erroneous, they do not cast [*3]the City in damages" (Kinsey v City of New York, 141 AD3d 420, 421 [1st Dept 2016], lv denied 28 NY3d 907 [2016]).
We note that because the City was not aggrieved by Supreme Court's orders, our consideration of an alternative ground for affirmance does not require a cross-appeal (see Parochial Bus Sys. v Board of Educ. of City of N.Y., 60 NY2d 539, 544-545 [1983]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 27, 2025